IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUTOFORGE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 2:02-cv-01265 |
| AMERICAN AXLE & MANUFACTURING, INC. | ) ) ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION AND ORDER

Before the Court for consideration and disposition are two motions in limine: DEFENDANT AMERICAN AXLE & MANUFACTURING, INC.'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S METHODOLOGY FOR CALCULATING DAMAGES AS IMPROPER, with brief in support (*Document Nos. 99 & 100*) and DEFENDANT AMERICAN AXLE & MANUFACTURING, INC.'S SECOND MOTION IN LIMINE ON DAMAGES, with brief in support (*Document Nos. 103 & 104*). In response to the two motions, Plaintiff has filed its BRIEF IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE and BRIEF IN OPPOSITION TO DEFENDANT'S SECOND MOTION IN LIMINE (*Document Nos. 101 & 105*). With respect to the Second Motion, Defendant has filed a reply brief, and Plaintiff has filed a sur-reply thereto (*Document Nos. 106 & 109*). The Court has reviewed all filings and the exhibits attached thereto. The Court will address the motions *seriatim*.

Background

On August 15, 2005, the Court entered a Memorandum Order which adopted the Report and Recommendation ("R & R") authored by Chief United States Magistrate Judge Francis X. Caiazza (*Document No. 72*). To summarize, at this juncture three claims for breach of contract remain viable: 1) a claim for breach of a contract for Idler Arm Supports, 2) a claim for breach of a contract for Splined Yolk Forgings, and 3) a claim for enforcement of an alleged oral settlement agreement between the parties, as memorialized in a December 21, 2000 fax from Jeet Nath to Defendant. Plaintiff has submitted two expert reports regarding damages, and Defendant

seeks to exclude the expert opinion evidence of damages set forth therein.

Discussion

A.  <u>Defendant American Axle & Manufacturing, Inc.'s Motion in Limine to Exclude Plaintiff's Methodology for Calculating Damages as Improper (the "First Motion")</u>

Defendant contends in its First Motion that Plaintiff may not recover the value of its business as the measure of damages, as set forth in Plaintiff's Pretrial Statement and the accompanying "Analysis of the Diminution in the Value of Autoforge, Inc." (hereinafter "Analysis") (*Document Nos. 76 & 77*). *See* Plaintiff's Pretrial Statement at 9-10 ("As a result of [the alleged breaches of contract], Autoforge went out of business. Autoforge had been a growing business but was damaged in the diminution of the value of its business in the amount of $6,198,766 ..."); *see also* Analysis at unnumbered 3 ("This report was prepared solely for the purposes of assisting [Plaintiff's counsel] in calculating the economic damages resulting from the diminution in the value of Autoforge ..."). Defendant's specific argument is that the value of the business is an impermissible attempt to recover consequential damages, and that the Michigan Uniform Commercial Code ("U.C.C.") does not permit an aggrieved seller to recover consequential damages. First Motion at ¶ 14-15. The Court agrees with Defendant's position. Consequential damages are not an authorized remedy for aggrieved sellers under the U.C.C. *See* M.C.L.A. § 2708; *S. C. Gray, Inc. v. Ford Motor Co.*, 286 N.W.2d 34, 44 (Mich. App. 1979) ("The U.C.C. does not allow the seller to recover consequential damages."). Moreover, even if the value of the business were not properly characterized as consequential damages, the U.C.C. simply does not allow the value of the business to be recovered by an aggrieved seller.

The Court also rejects Plaintiff's attempt to characterize the loss of the value of the business as incidental damages. *See* Brief in Opposition to Defendant's Motion in Limine at 16. The loss of the value of the business is far beyond the scope of that which is contemplated by the

provision of the Michigan U.C.C. which permits the recovery of incidental damages.[1]

Defendant also contends that Plaintiff may not seek to recover lost profits, to which Plaintiff claims entitlement in its Supplemental Pretrial Statement and the accompanying expert report. Defendant contends that the Terms and Conditions of the parties' Purchase Orders preclude the recovery of lost profits. First Motion at ¶ 17. The Purchase Orders for the components at issue provide, *inter alia*, that in the event that Defendant terminates the Purchase Order(s), it shall not be liable for "loss of anticipated profits." Document No. 50, exh. 28, ¶ 13.

The Court does not agree that the Purchase Order(s) Terms and Conditions are controlling. It appears that Plaintiff may be able to demonstrate that the limitation on lost profits contained therein "fail[s] of its essential purpose," and therefore the "standard" remedies provided by the Michigan U.C.C. would be reinstated. *See* M.C.L.A. § 440.2719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act."); *see also id.*, Comment n.1 ("[U]nder subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."). It appears that the limitation on Plaintiff's damages set forth in the Terms and Conditions would, if enforced, leave Plaintiff with virtually no remedy whatsoever in the event of a bad faith breach of contract, in which case the limited remedy could be said to "fail of its essential purpose." Additionally, the R & R expressly rejected Defendant's contention that the Terms and Conditions of the Purchase Orders "governed each and every dealing between the parties," and more generally rejected Defendant's reliance upon those Terms and Conditions. R & R at 14-15. The Court finds that Judge Caiazza's determination on that issue is the "law of the case." Therefore, Plaintiff's ability to recover damages is not limited by

---

[1]. "Incidental damages to an aggrieved seller" are defined as "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." M.C.L.A. § 440.2710.

3

the Terms and Conditions of the Purchase Orders.

Defendant also contends that lost profits are not recoverable because "such damages were not foreseeable to Autoforge and AAM at the time in which they executed their contracts." First Motion at ¶ 18. However, the U.C.C., which governs the contracts for the Splined Yolk Forgings and Idler Arm Supports, expressly provides for the recovery of lost profits, albeit under the limited circumstances set forth in the Code. *See Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119 (3d Cir. 1992); M.C.L.A. § 440.2708. Therefore, the Court rejects Defendant's contention that Plaintiff's lost profits may not be recovered because they were not foreseeable.

Defendant also argues that the alleged oral settlement agreement between the parties precludes Plaintiff from seeking lost profits because the settlement agreement incorporated, by reference, the Purchase Orders, which in turn preclude recovery of lost profits. First Motion at ¶ 19. However, as mentioned below, the alleged oral settlement agreement does not contain any language which specifically incorporates the Purchase Orders by reference. *See* Complaint, exh. S & *infra* n.2. Moreover, as stated above, Plaintiff's ability to recover damages will not be limited by the Terms and Conditions of the Purchase Orders.

Defendant also challenges the methodology for calculating lost profits set forth in the supplemental expert report on the grounds that it is "unreliable and highly speculative," and that it also "fails to establish the necessary causal link between AAM's alleged breach of contract and the lost profits ..." First Motion at ¶¶ 20-22. The Court has reviewed Plaintiff's supplemental expert report and finds that the methodology employed therein is neither unreliable nor highly speculative. As for the alleged lack of a causal link, the first sentence of the supplemental expert report states that it quantifies "the lost profits damages that [Plaintiff] sustained as a result of the alleged actions of [Defendant] in the above-captioned litigation." The remainder of the report goes on to explain the procedures performed, sources of information utilized, and the manner in which alleged lost profits were calculated. This objection is, therefore, without merit. Accordingly, the Court will not exclude evidence based on the supplemental expert report for the

reasons stated above.

Plaintiff contends that Defendant's alleged bad faith with respect to its failure to purchase the Splined Yolk Forgings entitles it to recover the value of the business. *See* Brief in Opposition to Defendant's Motion in Limine at 13-16. The Court does not agree. Michigan's enactment of the U.C.C. expressly imposes a duty of good faith upon a buyer in a requirements contract, *and* sets forth the available damages for a breach of the duty of good faith. However, nothing in the Michigan U.C.C. states that a bad faith breach of a requirements contract permits recovery of damages beyond those which are specifically available under the Michigan U.C.C.

The First Motion will be granted as to a limitation on Plaintiff's evidence of the value of the business. At trial Plaintiff will not be permitted to introduce evidence of the value of the business as part of its evidence of damages.

The Court observes that the supplemental expert report calculates Plaintiff's lost profits on the Splined Yolk Forgings which allegedly would have been sold from 2000 through 2005. Supplemental Expert Report, § III, ¶ 2. However, the alleged oral settlement agreement extended the Purchase Order for the Splined Yolk Forgings, specifically from December of 2001 to December of 2002, provided that Plaintiff's performance was satisfactory. *See* Complaint, exh. S. The Court finds and rules that evidence of lost profits beyond December of 2002 is impermissibly speculative, and, as the Court stated at the June 13, 2006 Pretrial Conference, the time period for which damages including lost profits may be recoverable will be limited to December, 2002, at trial.

B.  <u>Defendant American Axle & Manufacturing, Inc.'s Second Motion in Limine on Damages (the "Second Motion")</u>

Defendant again contends in their Second Motion that Plaintiff's damages are limited by the Terms and Conditions of the Purchase Order(s). Second Motion at ¶¶ 6-9. The Court has

5

already found that the damages are not so limited.[2]  However, the Court agrees with Defendant's contention that Plaintiff's recovery of damages is governed by M.C.L.A. § 440.2708.  *See* Second Motion at ¶ 10.  Section 2708 provides as follows:

**440.2708. Nonacceptance or repudiation; seller's damages.**

Sec. 2708.  (1) Subject to subsection (2) and to the provisions of this article with respect to proof of market price (section 2723), the measure of damages for nonacceptance or repudiation by the buyer is **the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages** provided in this article (section 2710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is **inadequate** to put the seller in as good a position as performance would have done[,] then the measure of damages is **the profit (including reasonable overhead) which the seller would have made from full performance by the buyer**, together with any incidental damages provided in this article (section 2710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

M.C.L.A. § 440.2708 (emphasis added).

Defendant contends that Plaintiff will not be able to show that the remedy provided in subsection (1) is inadequate, and therefore lost profits under subsection (2) will be unavailable.  Second Motion at ¶ 14.  Defendant's contention may prove to be so.  However, the Third Circuit's decision in *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119 (3d Cir. 1992), which interpreted M.C.L.A. § 440.2708, is instructive.  According to the *Tigg* court, a plaintiff can demonstrate the inadequacy of damages under subsection (1) "under two possible theories: (1) because it was a lost-volume seller or (2) because it was a producer of specialty goods that could not be resold."  *Tigg*, 962 F.2d at 1129-30.  While Plaintiff apparently was not a lost volume

---

[2].  Defendant also contends that the alleged settlement agreement incorporates by reference the Terms and Conditions of the Purchase Orders.  Second Motion at ¶ 9.  The Court has reviewed the letter from Jeet Nath which memorializes the alleged settlement agreement.  The letter *indirectly* references underlying purchase orders, but there is no language which specifically "incorporates by reference" the Terms and Conditions of the Purchase Orders.  *See* Complaint, exh. S.

seller,[3] given the nature and purpose of the Splined Yolk Forgings, Plaintiff may be able to demonstrate that it was a producer of specialty goods.[4]

Defendant also contends that Plaintiff cannot demonstrate that it was a producer of specialty goods because it never actually manufactured the Splined Yolk Forgings. Brief in Supp. of Second Motion at p. 9 (*citing Tigg*, 962 F.2d at 1130). However, the *Tigg* court stated that "damages calculated under Mich. § 440.2708 (corresponding to U.C.C. § 2-708) are an appropriate remedy when the seller learns of the breach during *or before the manufacture of the goods*." *Tigg*, 962 F.2d at 1129 n.10 (citations omitted; italics added). While Defendant's argument on this point is logical, it is also directly contradicted by *Tigg*. Therefore, Plaintiff will be permitted to demonstrate its potential entitlement to lost profits. However, in order to recover lost profits under section 2708(2), Plaintiff must demonstrate that the measure of damages set forth in section 2708(1) is "inadequate" because Plaintiff is a manufacturer of specialty goods that could not be resold in the marketplace. If Plaintiff establishes entitlement to lost profits, it may also be entitled to incidental damages. *See* M.C.L.A. § 2708(2) and § 2710.

Defendant also requests that the Court preclude Plaintiff from "introducing claims of bad faith on the part of the Defendant at the time of trial." Reply to Pltf's Br. in Opp. to Mot. in Limine at 5. The contract for the Splined Yolk Forgings was a requirements contract, R & R at 14, and Michigan law clearly imposes a duty of good faith upon a buyer in a requirements contract. *See* M.C.L.A. § 440.2306(1) ("A term which measures the quantity by the output of the

---

[3]. A "lost-volume seller" is defined as follows:
A lost volume seller is one who upon a buyers breach of contract, resells the article to a second purchaser at the price agreed to by the first purchaser. The second purchaser, however, would have purchased a similar article notwithstanding the first purchaser's breach. Under such circumstances, when the seller resells the article, he is still not made whole because "he will have lost one sale, one profit, over the course of the year.
*Tigg*, 962 F.2d at 1130.

[4]. This is a jury question under Michigan law. *Tigg*, 962 F.2d at 1130.

seller or the requirements of the buyer means such actual output or requirements as may occur in good faith ..."); *see also Tigg*, 962 F.2d at 1123 ("In a requirements contract for the sale of goods, the Michigan Commercial Code imposes an obligation on the buyer to exercise good faith in setting its requirements."). Given the alleged evidence of bad faith "double-dealing" by Defendant in this case and the relevance of same to Plaintiff's claim for breach of the contract for the Splined Yolk Forgings, the Court declines to prohibit Plaintiff from introducing evidence of bad faith by Defendant.

Conclusion

For the foregoing reasons, Defendant American Axle & Manufacturing, Inc.'s Motion in Limine to Exclude Plaintiff's Methodology for Calculating Damages as Improper will be granted in part and denied in part, as set forth above. Defendant American Axle & Manufacturing, Inc.'s Second Motion in Limine on Damages will likewise be granted in part and denied in part, as set forth above. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUTOFORGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | 2:02-cv-01265 |
| AMERICAN AXLE & MANUFACTURING, ) | |
| INC. ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 8th day of August, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1) Defendant American Axle & Manufacturing, Inc.'s Motion in Limine to Exclude Plaintiff's Methodology for Calculating Damages as Improper is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may not introduce the valuation or diminution of the value of its business, as set forth in the "Analysis of the Diminution in the Value of Autoforge, Inc.," as evidence of its damages at trial. In all other respects the Motion is DENIED. The Court also rules *sua sponte* that Plaintiff may not introduce evidence of lost profits beyond December of 2002; and

2) Defendant American Axle & Manufacturing, Inc.'s Second Motion in Limine on Damages is GRANTED IN PART and DENIED IN PART. The Second Motion is granted insofar as Defendant correctly contends that Plaintiff's damages are governed and limited by M.C.L.A. § 440.2208 (Michigan law) (corresponding to section 2-208 of the Uniform Commercial Code), but in all other respects the Second Motion is DENIED. At trial Plaintiff will have the opportunity to demonstrate its entitlement to damages pursuant to M.C.L.A. § 440.2208(1) or § 440.2208(2). Plaintiff will also have the opportunity to introduce evidence of Defendant's alleged bad faith in the breach of the contract for Splined Yolk Forgings.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:    Dennis J. Kusturiss, Esquire
Email: dkusturiss@vuonogray.com
Mark T. Vuono, Esquire
Email: mvuono@vuonogray.com

Steven W. Zoffer, Esquire
Email: szoffer@dmclaw.com
Joseph A. DiMenno, Esquire
Email: jdimenno@dmclaw.com