IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUTOFORGE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) 2:02-cv-01265<br>AMERICAN AXLE & MANUFACTURING, )<br>INC. )<br>)<br>Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court for consideration and disposition are two motions in limine: DEFENDANT AMERICAN AXLE & MANUFACTURING, INC.'S MOTION IN LIMINE, with brief in support (*Document Nos. 119, 120*) and PLAINTIFF AUTOFORGE, INC.'S FIRST MOTION IN LIMINE ON DAMAGES, with brief in support (*Document Nos. 122, 123*). The parties have filed responsive briefs and Defendant has filed a reply brief. After a thorough review of the filings and the exhibits attached thereto, both motions will be granted in part and denied in part.

### Background

On August 15, 2005, the Court entered a Memorandum Order (*Document No. 72*) which adopted the Report and Recommendation authored by Chief United States Magistrate Judge Francis X. Caiazza on July 7, 2005. To summarize, at this juncture three claims for breach of contract remain viable: 1) a claim for breach of a contract for Idler Arm Supports, 2) a claim for breach of a contract for Splined Yolk Forgings, and 3) a claim for enforcement of an alleged oral settlement agreement between the parties, as memorialized in a December 21, 2000 fax from Jeet Nath to Defendant.

On August 8, 2006, the Court issued an Order (*Document No. 110*) which resolved motions in limine that had been filed by Defendant AAM. In summary, the Court ruled that Plaintiff could not introduce the diminution in value of its business as evidence of its damages at trial and could not introduce evidence of lost profits beyond December of 2002. The Court also

ruled that Plaintiff's damages are governed and limited by M.C.L.A. § 440.2208 (Michigan law) and that Plaintiff would have the opportunity to introduce evidence of Defendant's alleged bad faith in the breach of the contract for Splined Yolk Forgings. Since the Court's ruling, the parties have engaged in mediation efforts and Defendant has procured its own damages expert. At a pretrial conference on December 8, 2006, the Court ordered further briefing on the remaining disputes regarding the parties' experts.

<u>Discussion</u>

A.    <u>Defendant American Axle & Manufacturing, Inc.'s Motion in Limine</u>

AAM's motion in limine seeks to exclude four separate categories of information: (1) testimony by Plaintiff's expert David Kaplan, which calculates damages based on the cross-wedge rolling production method; (2) testimony regarding damages sustained in 2002; (3) Plaintiff's claim for prejudgment interest; and (4) references to the term "fraud." The Court will address each category seriatim.

1.    Calculation of Damages Based on Cross-Wedge Rolling

Kaplan has based his calculation of damages upon the anticipated ability of Autoforge to produce the spine yolk forgings utilizing a cross-wedge rolling manufacturing technology throughout the contract. In essence, cross-wedge rolling would enable Autoforge to make the subject parts two at a time. Defendant has articulated numerous objections to this approach. Primarily, AAM emphasizes the fact that the contract purchase order was based on the use of the hammer forge manufacturing technique and the parts which were produced were never actually manufactured with the cross-wedge rolling technology. Thus, the profits which Autoforge may have reaped through the utilization of cross-wedge rolling are purely hypothetical. AAM points out that Kaplan does not make any allowance for a learning curve, transition problems, additional manpower, machinery, maintenance or other costs associated with the implementation of the cross-wedge rolling technology. In addition, Defendant contends that Autoforge would have had

to secure Product Part Approval Authorization ("PPAP") for the cross-wedge rolling technology before it could have been utilized. Autoforge, in response, contends that Kaplan's methodology to determine damages was reasonable, and that he made conservative assumptions based on the best information available, including his interview with Jitendra Nath, the president and owner of Autoforge. Autoforge argues that Defendant's objections to Kaplan's report and testimony go to the weight of the damages evidence rather than admissibility.

The Court finds that Defendant's objections are well-founded. There are two insurmountable factual problems that render Kaplan's testimony on this issue inadmissible. First, Autoforge never had the necessary equipment to actually utilize the cross-wedge rolling technology. Nath testified that Autoforge had three cross-wedge rolling machines, including one from Belarus which it purchased in February 2000 for use on the spline yolk forging ("SYF"). Nath Deposition at 310-311. *See also* Nath Deposition at 312-313, 482-483. However, Marvin Patterson testified at his deposition that Autoforge never actually had the money which was necessary to buy the steel to make the dies which were required in order to make the SYF part on the cross-wedge rolling machine. Patterson Deposition at 38, 41.

Second, Autoforge never sought or obtained the requisite PPAP approval from AAM. The original PPAP was based on hammer forge technology, *see* Exhibit J, and new authorization would have been necessary in order to switch to cross-wedge rolling. Plaintiff contends that such approvals are commonplace. Defendant contends that the approval process is difficult and lengthy, such that cross-wedge rolling could not have been implemented for some or all of the contract period. The record is clear that Autoforge never sought, let alone received, PPAP authorization for cross-wedge rolling. Thus, it is demonstrably erroneous for Kaplan to calculate damages based on the cross-wedge rolling technology throughout the entire alleged term of the contract. At best, Plaintiff might argue that it would have obtained PPAP approval for cross-wedge rolling at some time in the future. However, a jury would be purely speculating as to whether, and when, PPAP approval would be obtained. Indeed, because Autoforge never

obtained the die steel, it could not even submit parts made by the cross-wedge rolling technology to initiate the PPAP. In summary, the Court concludes that the expert's damages calculation based on the cross-wedge rolling technology is too speculative and unreliable. The motion in limine to exclude this testimony will be granted. Plaintiff's damages claim must be confined to the costs it actually incurred and projected through the utilization of the hammer forge manufacturing technique upon which the original purchase order contract was based.

  2. Damages for 2002

Defendant contends that damages for the year 2002 are speculative. This issue has been previously resolved and will not be revisited. Autoforge is entitled to present to the jury evidence to support its claim that the parties entered into a settlement agreement in December 2000 which extended the purchase order. *See* Magistrate Judge's Report and Recommendation dated July 7, 2005 ("Report and Recommendation") at 9-10, 13-14. The 2002 damages flow from that alleged settlement agreement. This aspect of Defendant's motion will be denied.

  3. Prejudgment Interest

Defendant seeks to preclude Autoforge from recovering prejudgment interest on its alleged lost profits. After studying the briefs of the parties, it appears that this dispute is more semantic than substantive. The issue boils down to whether "prejudgment interest" is distinct from "statutory interest." Defendant acknowledges in its reply brief that statutory prejudgment interest is recoverable. Plaintiff does not appear to be claiming anything other than statutory interest. To the extent that Autoforge seeks some additional form of prejudgment interest, AAM's motion will be granted.

Prejudgment interest is governed by state law and the Court has previously determined that Michigan law will apply.[1] Report and Recommendation at 7. The controlling authority

---

[1]Thus, Kaplan's calculation under Pennsylvania law is not admissible.

regarding recovery of prejudgment interest under Michigan law is *Firwood Mfg. Co. v. General Tire, Inc.*, 96 F.3d 163 (6th Cir. 1996), which is cited by both parties.  The analysis in *Firwood* was summarized in *Stamtec, Inc. v. Anson Stamping Co.*, 346 F.3d 651, 658-59 (6th Cir. 2003), as follows:

> The *Firwood* court considered whether an aggrieved seller could collect the cost of its lost use of money (interest) as an element of its incidental damages. The *Firwood* court began by noting that the Uniform Commercial Code entitles sellers to collect incidental, but not consequential damages. *Id.* at 169. Focusing on the issue of how Michigan had defined incidental damages, the court found that Michigan courts had not permitted an aggrieved seller to collect interest payments on a loan secured to maintain a business after a buyer's breach on the ground that such interest payments fell within the definition of consequential damages. *Id.* at 170. Because the Michigan courts had not addressed the specific issue of incidental damages arising from the lost use of money, the *Firwood* court considered the competing positions taken by the Seventh and Second Circuits. In doing so, the *Firwood* court looked to the general structure of the Uniform Commercial Code for guidance. The *Firwood* court "agree[d] with the Seventh Circuit's view that sellers are not entitled to [lost use of money] as an element of the damage award" because "a foregone profit from exploiting a valuable opportunity that the breach of contract denied to the victim of the breach fits more comfortably under the heading of consequential damages than of incidental damages." *Id.* at 171 (*quoting Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358 (7th Cir.1985)). The *Firwood* court "decline[d] to follow the Second Circuit's embrace of an expansive definition of incidental damages because [that] Court appeared to conflate the definition of consequential damages with that of incidental damages" when it determined that recovery depended on whether the interest payments were foreseeable, an element of the test for consequential damages. *Id.* at 170 n. 2. Thus, it was the considered opinion of the *Firwood* court that the general structure of the Uniform Commercial Code precluded the award of interest, whether claimed as charges arising from a bank loan or the buyer's lost use of money, as incidental damages because such costs fell outside the immediate buyer-seller transaction.

*Firwood* went on to state: "Nevertheless, Firwood is entitled to claim statutory interest from the date on which suit was filed under Mich. Comp. Laws Ann. § 600.6013 even if, as a seller, it was not entitled to interest as a measure of damages under the U.C.C." 96 F.3d at 172.  Accordingly, "consequential" prejudgment interest is not recoverable as an element of incidental damages.  By contrast, statutory prejudgment interest pursuant to Mich. Comp. Laws Ann. § 600.6013 is not only recoverable, but is mandatory.  *Gen-Pa Bigli Islem Ltd. Liability Co. v. Virtual Technology, Inc.*, 169 F.R.D. 84 (E.D. Mich. 1996).  Such interest is susceptible to an arithmetic calculation and will be awarded by the court, if applicable, rather than the jury.  *See Firwood*, *Id.* at 173

(remanding for calculation by court).

    4.    References to "Fraud"

Defendant seeks to preclude Autoforge from introducing evidence regarding "fraud" or its synonyms, including evidence pertaining to "conduct in bad faith." The Court did dismiss Plaintiff's fraudulent inducement claim. However, Autoforge correctly points out that the Court also recognized that the parties entered into a requirements contract for the 6884 part, which contains an implicit duty of good faith. Report and Recommendation at 14-15. Indeed, the Report and Recommendation states that "plaintiff easily reaches a jury on the claim that AAM acted in bad faith and/or inconsistent with standards of fair dealing." *Id.* at 15. Defendant does not rebut this argument in its reply brief. Moreover, Plaintiff agrees that it will not refer to AAM's conduct as being fraudulent. This aspect of Defendant's motion in limine will be denied.

B.    <u>Plaintiff Autoforge's Motion in Limine</u>

Autoforge seeks to exclude testimony by Defendant's expert Richard DuCarme. Autoforge raises challenges as to qualifications, reliability and relevance, or "fit." *In re Paoli R.R. Yard, PCB Litigation*, 35 F.3d 717, 741-43 (3d Cir. 1994).

Autoforge contends that DuCarme is not qualified to render the opinions he states because he has an undergraduate degree in mechanical engineering and a masters degree in industrial administration that included "only" 4-6 accounting courses. Autoforge further notes that DuCarme is not a CPA, his work experience is "broad based" and he has limited testimonial experience. Upon review, the Court concludes that DuCarme is qualified to testify as an expert witness. Federal Rule of Evidence 702 requires that an expert witness possess specialized knowledge that will assist the trier of fact. In *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000), the Court of Appeals instructed that the "specialized knowledge" requirement should be

construed liberally. Defendant outlines DuCarme's qualifications in its response and the Court finds that DuCarme has more than sufficient knowledge, skill, experience, training and/or education to testify as an expert in this matter.

Autoforge also challenges the methodology utilized by DuCarme. In particular, Autoforge contends that DuCarme does not provide an opinion concerning its damages, but merely comments on the credibility of Autoforge's expert, David Kaplan. Autoforge contends that a report targeted at the methodology used by the opposing expert invades the province of the jury. A similar criticism could be directed at any rebuttal expert. In this case, Plaintiff will introduce expert testimony by David Kaplan in an effort to convince the jury of its damages. Defendant will be permitted to present Richard DuCarme as an expert opposing the methodology and opinions offered by Plaintiff's expert to enable the jury to better understand.

Autoforge also seeks to exclude DuCarme's opinion that Kaplan failed to discount lost profits to reflect the alleged precarious financial condition of Autoforge. The Court agrees that this aspect of DuCarme's testimony should not be permitted. In his deposition, DuCarme testified that he had not quantified the discount factor that should be applied and could not state how he would do so. DuCarme Deposition at 88-90, 116-117, 132-133. This illustrates the unbridled speculation that would be required. Neither Kaplan nor DuCarme calculated a discount factor or articulated the methodology for doing so. If the testimony were to be permitted, the jury would have no guidance on how to determine an appropriate discount factor and would simply be forced to guess. Accordingly, Plaintiff's motion in limine will be granted as to this testimony.

The remainder of DuCarme's testimony should be admissible. Autoforge will have the opportunity to vigorously cross-examine DuCarme regarding the validity of his assumptions, analysis and conclusions. Of course, given the Court's ruling above, there will be no need for DuCarme to testify regarding Kaplan's reliance on the cross-wedge rolling manufacturing process.

<u>Conclusion</u>

For the foregoing reasons, Defendant American Axle & Manufacturing, Inc.'s Motion in Limine will be granted in part and denied in part, as set forth above. Plaintiff Autoforge's First Motion in Limine will likewise be granted in part and denied in part, as set forth above. An appropriate Order follows.

\

                      McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUTOFORGE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **2:02-cv-01265** |
| **AMERICAN AXLE & MANUFACTURING, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER OF COURT**

AND NOW, this 14th day of March, 2007, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED as follows:

DEFENDANT AMERICAN AXLE & MANUFACTURING, INC.'S MOTION IN LIMINE, (*Document No. 119*) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to David Kaplan's utilization and reliance on the cross-wedge rolling manufacturing process to determine Autoforge's production costs in his calculation of lost profits and as to Autoforge's ability to recover only statutory prejudgment interest, and is denied in all other respects.

PLAINTIFF AUTOFORGE, INC.'S FIRST MOTION IN LIMINE ON DAMAGES (*Document No. 122*) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to DuCarme's opinion testimony regarding a discount factor and is denied in all other respects.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Dennis J. Kusturiss, Esquire
Email: dkusturiss@vuonogray.com
Mark T. Vuono, Esquire
Email: mvuono@vuonogray.com

Steven W. Zoffer, Esquire
Email: szoffer@dmclaw.com
Joseph A. DiMenno, Esquire
Email: jdimenno@dmclaw.com