**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AUTOFORGE, INC.,                                    )
          Plaintiff,                          )
                                           )
        vs.                                       )  Civil Action No.  02-01265
                                           )
AMERICAN AXLE & MANUFACTURING,    )
INC.,                                                      )
          Defendant.                        )

## MEMORANDUM OPINION

This matter is before the Court on a Motion to Strike Plaintiff's Most Recent "Statement of Damages" in the Nature of a "Daubert" Motion [DE 148], filed by Defendant American Axle & Manufacturing, Inc. (hereinafter, "AAM") on October 15, 2007. For the following reasons, the Court GRANTS in part and DENIES in part said motion.

## FACTUAL/PROCEDURAL BACKGROUND[1]

In a complaint dated July 18, 2002, Plaintiff Autoforge set forth multiple claims against Defendants AAM and General Motors resulting from business dealings involving the manufacture and sale of certain steel forgings. (Docket No. 1). After the disposition of many motions including summary judgment [DE 72] and the settlement/dismissal of defendant General Motors [DE 74 and 75], the following claims remain against AAM: breach of a settlement agreement; breach of contract with respect to the 40006884

---

[1]

Because of the long and convoluted factual and procedural background as to this case, stemming back to the filing of the original Complaint on July 18, 2002, the Court limits its discussion of procedure as relevant to the resolution of the instant motion.

Splined Yoke Forging (hereinafter, "6884 Forging"); breach of contract for Idler Arm Supports; and a claim of statutory interest. (*See* Docket No. 130.) As the instant motion requires the Court to evaluate whether certain testimony is admissible to establish lost profit damages for the 6884 Forging breach of contract claim, a brief recitation of the factual and procedural history of the damages claimed throughout this lawsuit follow.

On September 15, 2005, Plaintiff filed a Pretrial Statement in which it claimed damages for value in diminution of business in an amount of $6,198,766. (Docket No. 76 at 10.)

On April 25, 2006, Plaintiff filed a Supplemental Pretrial Statement claiming that Autoforge is entitled to lost profits in an amount of $2,946,097 as an alternative measure of damages to the claim for diminution of value damages in the initial Pretrial Statement. (Docket No. 94-3.) In support of its lost profits damages claim, Plaintiff submitted an expert report and damages calculation prepared by David Kaplan of Alpern Rosenthal (hereinafter the "Kaplan Report").

On August 8, 2006, Judge McVerry granted in part and denied in part Defendant's Motion in Limine to Exclude Plaintiff's Methodology for Calculating Damages as Improper. (Docket No. 110.) The Court held that Autoforge could not recover value of the business damages under the Michigan Uniform Commerical Code as either consequential or incidental damages. (Docket No. 110 at 2-3.) The Court further held that lost profits damages were recoverable by the Plaintiff, but that "evidence of lost profits beyond December 2002 is impermissibly speculative, and, as the Court stated at the June 13, 2006 Pretrial Conference, the time period for which damages including lost profits may be recoverable will be limited to December, 2002, at trial". (Docket No. 110

at 5.)  With regards to defendant's second motion in limine, the Court acknowledged that Plaintiff's recovery of damages are governed by Michigan law, specifically, M.C.L.A. § 440.2708 (corresponding to U.C.C. § 2-708) and held "Plaintiff will be permitted to demonstrate its potential entitlement to lost profits.  However, in order to recover lost profits under section 2708(2), Plaintiff must demonstrate that the measure of damages set forth in section 2708(1) is "inadequate" because Plaintiff is a manufacturer of specialty goods that could not be resold in the marketplace.  If Plaintiff establishes entitlement to lost profits, it may also be entitled to incidental damages."  (Docket No. 110 at 7. (citing M.C.L.A. § 2708(2) and § 2710.))

On March 14, 2007, Judge McVerry granted defendant's motion in limine to exclude the Kaplan Report and any corresponding expert testimony.  The Court held that "the expert's damage calculation based on the cross-wedge rolling technology is too speculative and unreliable."  (Docket No. 130, at 4.)  Further, "Plaintiff's damages claim must be confined to the costs it actually incurred and projected through the utilization of the hammer forge manufacturing technique upon which the original purchase order contract was based." (Docket No. 130, at 4.)  On April 9, 2007, Judge McVerry denied Plaintiff's motion to reconsider, holding that it was not abuse of discretion to exclude the plaintiff's expert testimony in the March 14, 2007 Order.  (Docket No. 136.)[2]

On August 10, 2007, Plaintiff filed a Statement of Damages, in which it advised the Court that it "has elected not to establish its damages at trial by using an expert witness and therefore will not be submitting an 'expert report' on damages and lost

2

On June 18, 2007, the case was reassigned to this Court. (Docket No. 137.)

profits." (Docket No. 141, at 1.) Instead, Plaintiff seeks to rely on Jitendra Nath (hereinafter, "Nath"), the president and principal shareholder of Autoforge, to testify as a business owner and offer lay opinion witness testimony (under Federal Rule of Evidence 701) in order to establish Autoforge's lost profits. (Docket No. 141 at 1.) The Statement of Damages presents Autoforge's claim of $1,726,418 lost profits from the sale of the 6884 Forging for the period of 2000-2002. (Docket No. 141 at 2.) An attached document includes the calculations of lost sales, revenues, profit margin and scrap recovery sales used in determining the claim amount. (Docket No. 141-2.) The calculations page describes the estimated costs and scrap recovery sales of Autoforge as a percentage of the sale price of one 6884 Forging unit ($3.20). (Docket No. 141-2 at 2-5.) The claim amount in the Statement of Damages resulted from the multiplication of estimated revenues for each period (2000, 2001, and 2002) by an estimated profit margin (32.25 %) and the estimated scrap recovery sales (2.73 %). (Docket No. 141-2 at 2-5.)

On October 15, 2007, Defendant AAM filed the instant motion, in which AAM asserts that "the purported lay witness opinion testimony of Nath on the issue of lost profits exceeds the scope, not to mention contradicts the clear and unambiguous language of Rule 701", (Docket No. 148, at 2.)[3] In particular, Defendant relies upon *Lifewise*

---

[3]

Also on October 15, 2007, Autoforge filed Plaintiff's Motion in Limine, in which it challenges the reliability and relevance of the September 10, 2007 rebuttal report prepared by Richard DuCarme, Defendant's expert witness in the field of damage analysis. (Docket No. 149.) On October 17, 2007, during a telephonic status conference, Defendant represented that it intended to file a motion to strike Plaintiff's Motion in Limine. Accordingly, the Court held in abeyance Defendant's substantive response to Plaintiff's Motion in Limine pending the resolution of the anticipated motion to strike.

Subsequently thereafter, on October 22, 2007, as promised, Defendant AAM filed a Motion to Strike Plaintiff's Challenge to the Reliability and Relevancy of Ducarme's

*Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004), in which the Court held that a Chief Executive Officer's (hereinafter, "C.E.O.") testimony was inadmissible as lay opinion testimony because his testimony was not based on his experience as a businessperson and president of the company. Further, Defendant attempts to distinguish the instant case from *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993), upon which Plaintiff relies and in which the Third Circuit allowed a business owner to testify as to lost profits under Rule 701.[4]

On October 30, 2007, Plaintiff Autoforge filed its Brief in Opposition to Defendant's Motion to Strike Plaintiff's "Statement of Damages." (Docket No. 153.) Plaintiff argues that, in compliance with Rule 701, "Mr. Nath's testimony does not require scientific, technical or specialized knowledge" but instead "merely requires knowledge of simple math and is based on his rational knowledge of Autoforge's operations." (Docket No. 153, at 2.) Plaintiff contends that Nath prepared the Statement of Damages and its calculations using data from the Autoforge 2000 Income Statement

---

Report and Testimony [DE 152], in which it argues that Plaintiff's Motion in Limine violates the Court's July 12, 2007 Order and that the admissibility of DuCarme's expert testimony has already been addressed and ruled upon by this Court, referring to Judge McVerry's March 14, 2007 Order. (*See* Docket No. 130.) On October 30, 2007, Autoforge filed its Response to Defendant's Motion to Strike Plaintiff's Challenge to the Reliability and Relevancy of DuCarme's Report and Testimony. (Docket No. 154.) Said motion was held in abeyance pending the proceedings on the instant motion. (Docket No. 151.)

[4]

At the conclusion of its motion, Defendant argues that Mr. Nath does not qualify as an expert witness under Federal Rule of Evidence 702. (*See* Docket No. 148, at 10-13.) In response however, Plaintiff specifically asserts that it does not seek to introduce Mr. Nath as an expert. (*See* Docket No. 153, at 1) (providing that "Autoforge is not attempting to introduce Mr. Nath's testimony pursuant to Rule 702".) Accordingly, said argument is not before the Court and the Court declines to comment further on its merits.

that he had prepared himself. (Docket No. 153 at 4-5.) Further, Nath testified at his deposition that he did not use the Kaplan Report other than to highlight differences between his calculations and that of the excluded expert, and that he used Appendix C of the Kaplan Report only for the sequencing of the Statement of Damages. (Docket No. 153 at 5 (citing *Deposition of Jitendra Nath, September 28, 2007*, at 11).) The Plaintiff concludes that Nath should be permitted to testify under Rule 701 because the "calculations are based on conventional methods, his personal knowledge and his experience calculating profit margins and preparing income statements while Autoforge was operating." (Docket No. 153 at 11.)

## NATH'S TESTIMONY

Plaintiff offered Nath's testimony at motion hearings on November 2, 8, and 14, 2007. The following summarizes Nath's testimony at the hearings.

Nath is the founder, President and sole or one-hundred percent (100%) shareholder of Plaintiff Autoforge. (*Transcript of Daubert Hearing on November 2, 2007* (hereinafter, "TR-1") at 14.11-24.) Nath's duties at Autoforge included the overall management of the company, preparation of financial statements, and pricing of parts. (*TR-1*, at 14:25-18:12.)

Prior to his position at Autoforge, Nath had some experience with accounting and also had earned an M.B.A, with three majors in finance, computer information systems and management accounting. (*TR-1,* at 7:18-14:1.) Nath testified that he personally prepared, with input from his staff, annual and monthly income statements for Autoforge from 1996 onward. (*TR-1,* at 16:17-24.) Nath routinely conferred with an outside accountant, David Becker, with regards to the income statements that he prepared. (*TR-

*1*, at 16:25-17:23.)  The income statements were then used by Nath in the regular course of business "to analyze the operations of the company and to identify areas that needed attention." (*TR-1*, at 18:2-7.)

Nath also had significant involvement in the pricing of parts for sale at Autoforge, including the final determination of pricing.  (*TR-1*, at 18:8-12.)  The typical process used to price parts for sale involved the following: receipt of a request for quotation from a customer; review of the particular part by the engineering, production and quality staff; a meeting to discuss the process used in manufacturing the part and to estimate the production rates on equipment to determine if any additional equipment would be required; and determine after as to Autoforge's cost of production.  (*TR-1*, at 18:13-19:5.)  Nath testified that he often produced informal profitability reports during the course of business.  (*TR-1*, at 19:21-21:12.)  He stated that he performed profitability studies based on the 6884 Forging, but could not produce any such reports for this litigation. (*TR-1*, at 140:21-141:9.)

Nath also testified as to the specifics of the Plaintiff's Statement of Damages. (Docket No. 141 and 141-2.)  The Statement of Damages was prepared by Nath, with reference to the Autoforge Income Statement, an entry from a publication entitled the Steel Data Book concerning the theoretical weights of steel bars, and from his recollection and experience at Autoforge. (*TR-1*, at 103:13-105:3.)  He also testified that he used the excluded Kaplan Report, but only to help with the sequencing of his Statement of Damages. (*TR-1* at 105:4-10.)

The Statement of Damages presents the alleged damages of Autoforge for the claim that it was the exclusive supplier of the 6884 Forging to AAM.  Nath testified that

Autoforge never received a production release or a purchase order for the 6884 Forging. (*TR-1*, at 137:2-9.)  Autoforge did however produce a few hundred pieces as part of an evaluation process required by AAM.  (*TR-1*, at 137:2-9.)

The style used in the Statement of Damages described costs as a percentage of the unit selling price ($3.20) for one 6884 Forging.  (*TR-1*, at 116:11-117:4, 118:10-20.) Further testimony indicated that this was the same style used in the excluded Kaplan Report. (*TR-1*, at 118:10-17.)  Nath insisted that in preparing the Statement of Damages he relied only on the Autoforge Income Statement from 2000, which he had prepared himself.  (*TR-1*, at 28:25-29:7, 38:6-11, 117:21-121:14.)

Nath testified that he calculated the revenues lost over the period by multiplying the contract rate and the actual purchases by AAM of the 6884 Forging from another supplier.  (*TR-1*, at 28:7-28:23.)  Nath offered testimony to clarify his calculations of Autoforge's costs, profit margin and scrap recovery sales contained in the Statement of Damages.  Nath testified that the 6884 Forging required raw steel material grade 1137. (*TR-1*, at 144:9-12.)  After the manufacture of such forging, the remaining steel could be sold by Autoforge as scrap steel to a scrap dealer.  (*TR-1*, at 111:19-113:17.)  According to Nath, Autoforge made one purchase of steel material grade 1137 during the period and the price paid was 21.75 cents per pound.  (*TR-1*, at 58:9-59:1, 148:22-149:10, *Transcript of a hearing commencing on November 14, 2007,* (hereinafter, "TR-3"), at 24:18-25:9.) Nath maintained throughout his testimony that he estimated the costs of raw steel material used in the Statement of Damages (20 cents per pound) based on his recollection of fluctuations in steel market prices for the period of 2000-2002.  (*TR-1*, at 57:25-58:8, 59:23-60:8.)  He estimated the average sales price of steel scrap in the same manner.

(*TR-1*, at 113:21-115:10.)  His recollection was that prices fell toward the end of 2000, stayed low until 2002, and then began to rise again, but not to the high of 2000.  (*TR-1*, at 58:9-60:8, 144:13-146:8, 148:22-149:20.)  He testified multiple times that he could not produce, or did not have access to the actual market prices for the period in question.  (*TR-1*, at 60:1-5, 144:13-146:8.)  Nath testified similarly as to the cost of electricity used in his calculations, stating that he estimated the cost of electricity based on his recollection of electricity prices during the period in question.  (*Transcript of a hearing commencing on November 8, 2007,* (hereinafter, "TR-2") at 47:8- 48:24.)

Although he could not provide the actual market price data for these costs, Nath did take steps to verify his calculations after which he determined that his estimations were in fact correct.  (*TR-1*, at 58:9-59:1.)  Nath offered that he was able to obtain market price data of two similar grades of scrap steel (not grade 1137) from a company he used to do business with, Slippery Rock Steel.  (*TR-1*, at 39:9-43:20.)  Unlike Autoforge, Slippery Rock Steel was a member of the American Metal Market, and the prices were obtained from this source.  (*TR-1*, at 39:9-43:20, 115:21-116:3.)  With respect to the raw steel material prices, Nath drew a very rough correlation between the movement in steel scrap price data and his recollection of the pricing movements to conclude that his cost estimation of prices for the raw steel material over 2000-2002 was correct.  (*TR-1*, at 58:9-60:8.)  From the same price data, Nath was able to verify his estimation of steel scrap prices over the period.  (*TR-1*, at 39:9-43:20.)  He testified that since he did not have the actual price of the steel scrap, he was instructed how best to compute the average by a scrap dealer.  (*TR-1*, at 39:9-43:20.)  He first averaged the pricing data for the two other grades of steel, computed the average of these two averages over the

period, and last, subtracted fifteen percent from his calculated average to arrive at his final steel scrap average price.[5] (*TR-1*, at 39:9-43:20.)

To verify the estimations of the cost of electricity, Nath presented one invoice to the Court of electricity charges of Autoforge, from March 2, 2000 to April 3, 2000 for a price of 6.85 cents per kilowatt hour.[6] (*TR-2*, at 47:8-50:22.) He maintained that the estimated price used in his calculation was based on his recollection of electricity prices over the period. (*TR-2*, at 47:8-50:22.) According to Nath, the invoice verified his average price because the invoice set forth a price for electricity that was higher than his estimation of the electricity cost for the period. (*TR-2*, at 47:8-50:22.)

Nath also testified that Autoforge was closed for business in September, 2001. (*TR-2*, at 21:7-9.)

## LEGAL AUTHORITY

Federal Rule of Evidence 701 provides in its entirety:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

---

[5]

After the three hearings were completed, enclosed with a letter dated November 12, 2007, Autoforge presented 16 scrap steel invoices from 1999, 7 scrap steel invoices from 2000, 10 electric invoices from 1999, and four electric bills from 2000.

[6]

*See supra* footnote 5.

Fed. R. Evid. 701. Subsection (c) was added by amendment in 2000, and as stated in the Advisory Committee's Note, the purpose of such amendment was "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 Advisory Committee's Note (2000 amendments). Further, the amendment ensures that witnesses offering opinion testimony based on scientific, technical or other specialized knowledge must comply with all expert disclosure requirements. *Id.*, *See* Fed. R. Civ. P. 26. and Fed. R. Crim. P. 16.

With respect to lay opinion testimony of a business owner or officer, the advisory committee's note provides:

> For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. See, e.g., Lightning Lube, Inc. v. Witco Corp. 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). **Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.** The amendment does not purport to change this analysis.

Fed.R.Evid. 701 Advisory Committee's Note (2000 amendments)(emphasis added).

The Third Circuit has recognized that "[t]he modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980). Both pre- and post-2000 amendment cases have emphasized

that prior to the admission of any lay opinion testimony as to lost profits or value, business owners and officers must establish the proper foundation. In *Lightning Lube*, a pre-2000 amendment case, the Third Circuit held that the district court did not abuse its discretion by permitting the owner of a quick lube franchising business to offer lay opinion testimony as to the prospective lost profits caused by the actions of the defendant. *Lightning Lube,* 4 F.3d at 1175. The opinion of the owner relied on a report prepared by an accountant, but the court found that the owner had personally participated in the production of the report. *Id.* Additionally, the court found that the owner was knowledgeable and participated in the day-to-day affairs of the business. *Id.* The Court concluded that when offering a lay opinion, a principal may rely on the reports of others, including outsiders, to the extent that he "posses[es] the requisite personal knowledge or foundation to render his lay opinion testimony admissible under Federal Rule of Evidence 701." *Id.* (quoting *Lightning Lube, Inc. v. Witco*, 802 F.Supp. at 1193).

Several post-2000 amendment cases have discussed lay opinion testimony by business owners under Rule 701 and the requirement of personal knowledge by the witness. In *Lifewise Master Funding*, the Tenth Circuit held that it was not abuse of discretion for the district court to exclude testimony of the plaintiff's C.E.O. *Id.* at 930. The Court acknowledged that he "could have testified solely as a businessperson based on his personal knowledge and his experience as president of the company." *Id.* His position qualified him to offer a "straightforward opinion as to lost profits using conventional methods based on [the company's] actual operating history." *Lifewise Master Funding*, 374 F.3d at 930. The C.E.O. however prepared a damages report that included many complicated damage estimates that he had not previously used that

included "moving averages, compound growth rates, and S-curves." *Id.* Ultimately, the Court concluded that because his testimony "fail[ed] to be rationally based on [the C.E.O.'s] perception," said testimony was inadmissible as lay opinion testimony under Rule 701. *Id.*

Circuit courts have held that persons outside of a business, including attorneys and financial consultants, are not able to establish the requisite foundation of personal knowledge and may not offer a lay opinion as to value or project lost profits of a business. *See DIJO, Inc. V. Hilton Hotels Corp,* 351 F.3d 679 (5th Cir. 2003) (holding that district court abused its discretion in permitting a financial consultant, who was never employed by a business, to offer a lay opinion as to the value of the business because the financial consultant did not "have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits."); *See also, JGR v. Thomasville Furniture Indust.,* 370 F.3d 519 (6th Cir. 2004) (holding that the district court abused its discretion by permitting a witness, an attorney and CPA, with no personal knowledge of the business, other than to prepare a damages report for litigation, to offer lay opinion testimony as to the value of lost profits). These persons cannot testify under Rule 701 because their particularized knowledge of the business is not obtained by virtue of holding an internal position. Therefore, these outsiders must be qualified as experts to offer opinion testimony.

Upon similar facts to the case at hand, the District Court for the Northern District of Alabama, in *K.W. Plastics v. US Can Co.,* set forth a succinct test to evaluate whether a lay opinion damages witness relying on a damages report satisfies the personal knowledge foundation requirement. Interpreting *Lightning Lube,* the Court stated that "a

lay damages witness may offer a damages report only if he has personal knowledge of the components and materials of the report; and either (1) he helped prepare the report based on personal knowledge; or (2) the contents of the report are admissible themselves." *K.W. Plastics,* 131 F.Supp.2d at 1273 (M.D. Ala. 2001) (citing *Lightning Lube,* 802 F.Supp at 1175). *See Lifewise Master Funding*, 374 F.3d at 929. ("[i]n one group of cases, the courts found business owners' testimony admissible under Rule 701 because the owners had sufficient personal knowledge of their respective businesses *and* of the factors on which they relied to estimate their profits."); *See also, Mississippi Chemical Corp v. Dresser-Rand Co.*, 287 F.3d 359 (5th Cir., 2002) (holding that district court did not abuse its discretion in permitting the director of risk management and property management to offer lay opinion testimony as to lost profits to the business resulting from a defective compressor train because the witness had sufficient personal knowledge, the underlying facts/figures were admitted into evidence from other sources, and the existence of the opportunity to cross examine the witness on both calculations and underlying methods). The Court further noted that "[a] Rule 701 witness cannot simply assert conclusions; his testimony must rest upon an antecedent predicate and foundation." *KW Plastics*, 131 F.Supp.2d at 1274 (citations omitted).

# ANALYSIS

The law of the case doctrine[7] requires this Court to be bound by the previous holdings in this case, including the ruling on the previous motion in limine [DE 110] which permits Autoforge to attempt to establish lost profits damages resulting from the alleged breach of the 6884 Forging contract for a period ending in December 2002. The Court must now consider whether Plaintiff's proffer of lay opinion testimony by Nath, the President of Autoforge, is admissible under Rule 701.

In its brief, AAM argues that the case at hand is distinguishable from the Plaintiff's lead case, *Lightning Lube*, because (1) Autoforge was closed for business during the claim period and (2) the opinions of the owner permitted to testify in *Lightning Lube* were based on actual history and existing data while Autoforge never produced the 6884 Forging and no data exists. (Docket No. 148 at 3-4.) The Court acknowledges that Autoforge was closed for business and ceased to be a going concern in September, 2001. (*TR-2*, at 21:7-9.) Further, the 6884 Forging was never put into production by Autoforge, which only produced a few hundred pieces as part of an evaluation process required by AAM. (*TR-1*, at 137:2-9.) While the Court declines to exclude such testimony as requested by Defendant under Federal Rule of Evidence 701, the Court acknowledges that substantial issues exist as to the nature of this proffered

---

[7]

"The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir.2003). The doctrine also applies to subsequent rulings by different judges in the same case. *Casey v. Planned Parenthood of Southeastern Pennsylvania*, 14 F.3d 848, 856 n. 11 (3d Cir.1994).

testimony which may not ultimately withstand a challenge under Federal Rule of Evidence 403.[8]

Accordingly, this Court holds that Nath, as President and sole shareholder of Autoforge, is qualified to offer lay opinion testimony of lost profits under Federal Rule of Evidence 701 to the extent that such opinions are based on facts within his particularized knowledge by virtue of his position at Autoforge and to the extent a proper foundation is laid. However, it is also the opinion of this Court that many of the facts and opinions as set forth by Nath during his testimony and in the Statement of Damages lack the proper foundation, are speculative in nature and amount to a proffer by Autoforge of "an expert in lay witness clothing." Fed. R. Evid. 701 Advisory Committee's Note (2000 amendments). As noted during the motion hearings, the Court is also chagrined as to the lack of documentation or other evidence presented by Autoforge to substantiate its lost profits claim and the potential for argument based upon spoliation of evidence in this case.

---

[8]
In his Memorandum Opinion, Judge McVerry held that "Defendant contends that damages for the year 2002 are speculative. This issue has been previously resolved and will not be revisited. Autoforge is entitled to present to the jury evidence to support its claim that the parties entered into a settlement agreement in December 2000 which extended the purchase order." (Docket No. 130 at 4 (citing Docket No. 67 at 9-10, 13-14).) Further, "[t]he 2002 damages flow from that alleged settlement agreement. This aspect of Defendant's motion will be denied." (Docket No. 130 at 4.) The Court notes that Judge McVerry's Memorandum Opinion and Order of March 14, 2007 [DE 130] granted in part and denied in part Defendant's Motion in Limine [DE 119] and despite same, the Court believes it is not restricted in the Court's present assertion that the 2002 lost profits damages of Autoforge may be found speculative because of Autoforge being out of business in 2002 and the fact that the 6884 Forging was never actually produced. Moreover, this Court is persuaded by the Defendant's argument that Plaintiff's claimed damages for 2002 are speculative because the contract period for the purchase order for the 6884 Forging ended on December 6, 2001. (Docket No. 119 at 13-16.)

Based on the foregoing, the Court further holds that the following factors and opinions offered by Nath are inadmissible as lay opinion testimony based on the record before it: (1) estimated average cost of raw steel, estimated average sales price of scrap steel, and estimated cost of electricity for the period of 2000-02 based on Nath's recollection of market prices; (2) any research by Nath to verify his recollections or factors relying on such research; (3) any cost factors or percentages that are identical to the same in the excluded Kaplan Report, but not the 2000 Income Statement; and (4) any ultimate conclusions that derive from the excluded factors. The Court will address each, in turn.

A.     Estimated Average Market Prices for Period of 2000-02

The Court will first analyze the estimated average cost of steel, price of scrap steel and cost of electricity for the period in question together as each has the same fatal flaw preventing its admission as lay opinion testimony. The estimations of these costs are based on Nath's recollection of market prices during the period in question. A business owner or officer cannot offer lay opinion testimony as to value unless the opinion is based on facts within the personal knowledge of the witness or that are independently admissible. *K.W. Plastics*, 131 F.Supp.2d at 1273 . Therefore, Nath's estimation of the average cost of raw steel material grade 1137, average sales price of scrap steel, and electricity costs from 2000-2002 are inadmissible as lay opinion testimony under Rule 701 because the market prices upon which these estimations rely are not independently admissible or within his personal knowledge by virtue of his position within Autoforge. Foundation is lacking.

Nath has stated clearly that the market price data of steel material and scrap steel for the period of 2000-2002 upon which his estimations rely is not available. (*TR-1*, at 60:1-5, 144:13-146:8.) Similarly, Autoforge has not attempted to admit evidence of actual market data of electricity costs for the period in question.[9] (*TR-2*, at 47:8-50:22.) The estimated market prices proffered by Nath therefore are not independently admissible into evidence in this matter.

The market price data for the period upon which his estimations rely is also not within Nath's personal knowledge. Nath was President and sole shareholder of a manufacturing company that did not produce or set prices for raw steel, scrap steel or electricity. While Autoforge made periodic purchases of raw steel and electricty as well as sales of scrap steel during the operation of its business, Nath's only experience with market prices by virtue of his position in Autoforge is based on actual purchases or sales of the commodity in question. He testified that he made one actual purchase of raw steel material grade 1137 (*TR-1*, at 58:9-59:1, 148:22-149:10, *TR-3*, at 24:18-25:9) and still has no access to actual market prices for this type of steel material for the time period 2000-2002. (*TR-1*, at 60:1-5, 144:13-146:8.) Rather, he based his estimation of these market prices over the period on his recollection of fluctuations in prices of steel in general, and not specifically on the type of steel in question here. (*TR-1*, at 57:25-58:8, 59:23-60:8, 113:21-115:10.) He similarly stated that his estimation of electricity was based on his recollection of electricity prices, and not on any actual sums paid for electricity by Autoforge. (*TR-2*, at 47:8-48:24.) This general knowledge of the steel and

---

[9]

*See supra* footnote 5.

electricity markets by an outsider such as Nath is not sufficient to establish the foundation required to permit Nath to offer his lay opinion as to a proper estimation of market prices for steel or electricity over the period in question.

Nath's position inside Autoforge and outside of the steel and electricity markets is analogous to situations in which Circuit Courts have excluded lay opinion testimony as to value by outsiders of an organization. In *JGR v Thomasville Furniture Indust.*, the Sixth Circuit held that the district court abused its discretion in permitting a witness who was a lawyer and accountant and had no personal knowledge of the company's books except to prepare for trial to offer lay opinion testimony as to the value of lost profits. *JGR*, 370 F.3d 519. Likewise, the Fifth Circuit held in *DIJO v. Hilton Hotels Corp.*, that a financial consultant who was the primary contact of the company's lender, did not have the requisite personal knowledge to offer lay opinion testimony as to the value of the company. *DIJO,* 351 F.3d 679. Autoforge's situation can be distinguished from *Tampa Bay Shipbuilding & Repair v. Cedar Shipping Co., Ltd.*, in which the Eleventh Circuit permitted a company's employees to offer lay opinion testimony as to the reasonableness of the value of the company's charges relative to other businesses in the area. *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.,* 320 F.3d 1213, 1222 (11th Cir. 2003). Nath is an outsider to the steel and electricity markets and he is purporting to offer testimony as to his lay opinion of a proper estimation of actual market prices and not the reasonableness of those prices. Following the cited cases, any opinion offered by Nath in this arena is inadmissible because it is not within his personal knowledge by virtue of his position within Autoforge. Without actual market price data for the period in question, properly admitted before the court, Nath cannot offer a lay opinion of an

estimation of the market prices of steel and electricity which are critical to his formulation of lost profits damages.

        B.       Research by Nath to Verify his Recollection of Market Prices

This Court holds that any testimony offered by Nath as to any research conducted to verify his recollection of the market prices as outlined in section A above is inadmissible as it is not based on his personal knowledge by virtue of his position within Autoforge. Autoforge cannot establish the requirement of personal knowledge by way of this research conducted by Nath. This prohibition includes any conversations of Nath with scrap dealers or persons in the steel industry, and any market price data provided to Nath from these persons. (*See TR-1*, 39:9-43:20.) Also, any other research conducted by Nath to verify data, including articles found on the Internet, is excluded. (*TR-2*, at 7:6-8:16.)[10]

        C.       Cost Factors in Statement of Damages that Mirror the Excluded Kaplan Report

This Court holds that any testimony offered by Nath that relies on cost factors or percentages used in Appendix C of the excluded Kaplan Report that do not appear in the 2000 Autoforge Income Statement are also inadmissible as such testimony is not within the personal knowledge of Nath by virtue of his position within Autoforge. The following cost factors used by Nath in the Statement of Damages are identical to those used in Appendix C, but different from the same category in the 2000 Autoforge Income Statement: (1) Production Supplies; (2) Equipment Repairs; and (3) Shop Supplies.

---

[10]

The proffered testimony of Nath with regards to his research, conversations and the like is objectionable as hearsay. Fed. R. Evid. 802. Nath is not offered as an expert, but as a lay witness and, as such, cannot offer an opinion relying on this information.

(Docket No. 141-2 at 2.)  Again, applying the rule in *KW Plastics*, a business owner or officer cannot offer lay opinion testimony as to value unless the opinion is based on facts within the personal knowledge of the witness or that are independently admissible.  *KW Plastics,* 131 F.Supp.2d at 1273.  As discussed above, the Kaplan Report has been ruled inadmissible in these proceedings and therefore, not independently admissible.  (*See* Docket No. 130 at 4.)  Nath testified that he personally prepared the 2000 Income Statement, and that he had prepared such a statement every year beginning in 1996.  (*TR-1*, at 16:17-24.)  He further testified that in preparing the Statement of Damages, he used the data from the 2000 Autoforge Income Statement.  (*TR-1*, 28:25-29:7, 38:6-11, 117:21-121:14.)  A thorough review of the 2000 Income Statement, Appendix C and Nath's Statement of Damages indicates that some of the cost percentages used by Nath in the Statement of Damages (Production Supplies, Equipment Repairs and Shop Supplies) were transferred from Appendix C of the Kaplan Report and not the 2000 Autoforge Income Statement.  (*See* line items ... *TR-1*, Exhibit 1; Docket No. 141-2; Docket No. 119-2 at 20-22.)  As the calculations in Appendix C are not based on Nath's personal knowledge or independently admissible, Nath cannot offer lay opinion testimony that purports to rely on the same.

D.      Ultimate Conclusions that Derive from Excluded Factors

In accordance with this opinion, many of the cost factors in the Plaintiff's Statement of Damages that Nath purported to rely on in his testimony have been excluded.  As such, any ultimate conclusions of Nath in the Statement of Damages derive from inadmissible evidence.  These ultimate conclusions, including calculations of

Autoforge's expected profit margin and lost profits, therefore must also be excluded at the time of trial.

As presently constituted, Nath's proffered testimony is speculative in nature and violates the requirements of Federal Rule of Evidence 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. Rule. Evid. 403. The Court finds that the probative value of Autoforge's proffered lay witness testimony, because of the lack of supporting documentation provided by Autoforge to establish the costs outlined above during 2000-2002, and its reliance, at least in part, on a previously excluded expert report, is substantially outweighed by the danger of unfair prejudice to the defendant, confusion of the issues and has the potential to mislead the jury.

## CONCLUSION

Based on the foregoing, the Court GRANTS in part and DENIES in part the Motion to Strike Plaintiff's Most Recent "Statement of Damages" in the Nature of a "Daubert" Motion [DE 148]. As a business owner and officer of Autoforge, Nath qualifies under Federal Rule of Evidence 701 to offer lay opinion testimony as to the lost profits of Autoforge. His opinion testimony however must rely on facts that are within his personal knowledge by virtue of his position within Autoforge. Like the C.E.O. in *Lifewise Master Funding*, under Rule 701, Nath can offer a "straightforward opinion as to lost profits using conventional methods based on [the company's] actual operating history." *Lifewise Master Funding*, 374 F.3d at 930. On the contrary, Nath cannot rely on the factors as outlined above that are deemed to be outside of his personal knowledge

and any opinions or conclusions that derive from such factors. Specifically, Nath cannot offer an opinion relying on any costs transcribed from the excluded Kaplan Report, and estimations of the market prices of steel, steel scrap and electricity during the period of 2000-2002 based on his recollection. Any ultimate conclusions deriving from these factors, including the calculations of profit margin and lost profits, are also outside the scope of Nath's personal knowledge and cannot be offered by Nath as lay opinion testimony under Rule 701. To the extent that Autoforge still plans to rely on Nath's testimony as to damages, Autoforge and Nath are required to submit a written analysis of such damages in conformity with this opinion on or before January 15, 2008. Given Nath's education and experience at Autoforge he should be able to provide "straightforward, common sense calculations" for the trier of fact to consider. *Lifewise Master Funding*, 374 F.3d at 929-30.

<u>*s/ Nora Barry Fischer*</u>

Nora Barry Fischer

United States District Judge

Dated: January 4, 2008

cc:     All counsel of record